**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

STATE OF NEW YORK
ATTORNEY GENERAL
MANAGING ATTY'S OFC
RECEIVED-NYC
2026 SEP -8 AM 10:06

RYAN WHALEN,

Plaintiff,

-against-

BROOKLYN NETS, LLC d/b/a
BROOKLYN SPORTS & ENTERTAINMENT,
and KEIA COLE,

Defendants.

Civil Action No. ____________

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Ryan Whalen, by and through his attorneys, QK Legal PLLC, as and for his Complaint against Defendants Brooklyn Nets, LLC d/b/a Brooklyn Sports & Entertainment and Keia Cole, alleges as follows:

## OVERVIEW

1. This is an action for unlawful retaliation and discrimination arising from the termination of Plaintiff Ryan Whalen's employment sixteen days after he returned from a protected period of parental leave taken to care for and bond with his newborn son.

2. Mr. Whalen served as Vice President of Cybersecurity at Brooklyn Nets, LLC d/b/a Brooklyn Sports & Entertainment ("BSE") from April 2024 until his termination in March 2026. He was a senior member of BSE's leadership and had no record of discipline of any kind.

3. In July 2025, Mr. Whalen received a positive annual performance review, and in August 2025 he received a performance bonus. Several months later, following the birth of his son on November 4, 2025, Mr. Whalen took two periods of parental leave protected by

the federal Family and Medical Leave Act ("FMLA") and the New York Paid Family Leave law ("NY PFL").

4. The adverse treatment of Mr. Whalen began while he was still on leave and intensified upon his return. BSE removed him from a professional conference he had attended in each of the prior two years; his supervisor, Defendant Keia Cole, received him with uncharacteristic hostility on his first day back; nine days after his return she issued him the first negative performance review of his BSE career, citing criticisms that had never previously been communicated to him; and sixteen days after his return BSE terminated his employment, offering only the vague explanations of "shifting business needs" and "role alignment."

5. Defendants' stated reasons for terminating Mr. Whalen's employment are pretextual. The true reasons for the adverse actions, including his termination, were that Mr. Whalen had exercised his rights to protected family leave and was a new parent and caregiver to a young child.

6. Mr. Whalen brings this action to remedy interference with and retaliation for the exercise of rights under the FMLA; retaliation for the use of a legally protected absence in violation of New York Labor Law § 215; discrimination because of familial status in violation of the New York State Human Rights Law; and discrimination because of caregiver status in violation of the New York City Human Rights Law. He seeks back pay, front pay, liquidated and compensatory damages, punitive damages, and attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

7. Pursuant to New York Labor Law § 215(2)(b), Plaintiff will serve a copy of this Complaint upon the New York State Attorney General at or before the commencement of this action.

8. Pursuant to N.Y.C. Administrative Code § 8-502(c), Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

10. This Court has supplemental jurisdiction over Plaintiff's state and municipal law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claim in this action that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, Plaintiff was employed and performed his work in this District, and Defendants reside and conduct business in this District.

## PARTIES

**Plaintiff**

12. Plaintiff Ryan Whalen is an individual residing in Kings County, New York.

13. At all relevant times, Mr. Whalen was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2), in that he had been employed by BSE for at least twelve months and had worked at least 1,250 hours during the twelve-month period preceding his leave.

14. At all relevant times, Mr. Whalen was an "employee" within the meaning of the New York Labor Law, N.Y. Lab. Law § 190(2), the New York State Human Rights Law, and the New York City Human Rights Law.

**Defendants**

15. Defendant Brooklyn Nets, LLC, doing business as Brooklyn Sports & Entertainment ("BSE"), is a limited liability company organized under the laws of the State of New York, with a principal place of business at 168 39th Street, 7th Floor, Brooklyn, New York 11232.

16. At all relevant times, BSE was a "covered employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4), in that it was engaged in commerce or in an industry or activity affecting commerce and employed fifty or more employees within seventy-five miles of Mr. Whalen's worksite.

17. At all relevant times, BSE was an "employer" within the meaning of the New York Labor Law, N.Y. Lab. Law § 190(3), the New York State Human Rights Law, N.Y. Exec. Law § 292(5), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-102.

18. Defendant Keia Cole is an individual who, at all relevant times, served as Chief Digital Officer of BSE and was Mr. Whalen's direct supervisor.

19. At all relevant times, Ms. Cole exercised supervisory authority and control over the terms and conditions of Mr. Whalen's employment, including the authority to evaluate his performance, and she personally made or participated in the decisions to issue Mr. Whalen a negative performance review and to terminate his employment.

20. By reason of the authority and control described above, Ms. Cole acted as an "employer" of Mr. Whalen within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), and the New York Labor Law, and is subject to individual liability under the New York Labor Law, the New York State Human Rights Law, and the New York City Human Rights Law.

## FACTS

### A. Mr. Whalen's Employment and Performance Record at BSE

21. Mr. Whalen joined BSE in April 2024 as Vice President of Cybersecurity, a senior leadership position with significant organizational responsibility.

22. Mr. Whalen reported directly to Defendant Keia Cole, BSE's Chief Digital Officer. Ms. Cole served as Mr. Whalen's reviewer for every performance review he received at BSE.

23. Mr. Whalen's annual base salary was $241,999.92, and he was eligible for a target annual bonus of twenty percent of his base salary.

24. Mr. Whalen received positive performance reviews throughout his employment at BSE until his return from parental leave.

25. In his first performance review at BSE, which he acknowledged in July 2024, Ms. Cole rated Mr. Whalen's overall performance "Exceeded Expectations" — the second-highest of the five available ratings. Ms. Cole wrote that Mr. Whalen had "demonstrated a strong

work ethic, commitment to the company, and significant expertise," that he was "open and responsive to feedback," and that "[i]t is a pleasure to work with him."

26. In July 2025, Mr. Whalen received his first full-year performance review. His overall rating was "Consistently Meets Expectations." Ms. Cole wrote that Mr. Whalen had "made progress across his goals" and "contributed meaningfully" to BSE's cybersecurity program, and described his work as "a meaningful accomplishment that reflects Ryan's performance over the past year." Ms. Cole rated Mr. Whalen as exceeding or far exceeding expectations on three of BSE's four core company values.

27. Neither review identified any deficiency in Mr. Whalen's performance.

28. In August 2025, consistent with the July 2025 review, Mr. Whalen received a performance bonus of approximately eighteen percent of his base salary.

29. At no time before March 2026 did Mr. Whalen receive a written or verbal warning, a performance improvement plan, or any other form of progressive discipline.

**B. Mr. Whalen's Protected Parental Leave**

30. In July 2025, Mr. Whalen informed Ms. Cole that his wife was expecting a child in November 2025.

31. Mr. Whalen's son was born on November 4, 2025.

32. Mr. Whalen took a first period of parental leave from on or about November 3, 2025 through on or about December 3, 2025, and returned to work on or about December 4, 2025.

33. Because of the demands of active projects, Mr. Whalen elected to divide his parental leave and to take a second period of leave. He informed Ms. Cole of this plan before he departed.

34. Mr. Whalen took a second period of parental leave beginning on or about January 26, 2026, and returned to work on or about March 2, 2026.

35. Mr. Whalen's leave was taken for the birth of his son and in order to care for and bond with his newborn child — a purpose protected by the FMLA, 29 U.S.C. § 2612(a)(1)(A), and by the New York Paid Family Leave law.

36. BSE was at all relevant times aware that Mr. Whalen was exercising rights under the FMLA and the NY PFL. Mr. Whalen informed Ms. Cole of each period of leave before it began, BSE arranged for the payment of New York Paid Family Leave benefits, and BSE held Mr. Whalen's position open during his absences.

**C. BSE Excludes Mr. Whalen From a Professional Conference During His Leave**

37. While Mr. Whalen was on his second period of parental leave, BSE removed him from the list of employees scheduled to attend the annual NBA Technology Conference.

38. Mr. Whalen had attended the NBA Technology Conference in each of the two preceding years, and Ms. Cole had previously directed him to attend.

39. BSE removed Mr. Whalen from the conference attendance list without prior discussion with him and without explanation. A member of Mr. Whalen's team informed him that another employee had been added to the attendance list in his place.

**D. Ms. Cole Receives Mr. Whalen With Hostility Upon His Return**

40. On or about March 2, 2026, Mr. Whalen's first day back from his second period of leave, he went to Ms. Cole's office to greet her. Ms. Cole dismissed him abruptly and stated that she did not have time to speak with him.

41. When Ms. Cole later came to Mr. Whalen's office, she stated that the team was too busy even for a brief greeting.

42. Ms. Cole's conduct toward Mr. Whalen upon his return was markedly different from the collegial relationship that had characterized their interactions before his periods of leave.

**E. BSE Issues Mr. Whalen a Sudden Negative Performance Review**

43. On or about March 11, 2026, nine days after Mr. Whalen returned from his second period of leave, Ms. Cole delivered to Mr. Whalen a mid-year performance review. The review concluded that Mr. Whalen was "not meeting expectations consistently" for his role and rated his performance "Sometimes Meets Expectations," the second-lowest rating on BSE's scale.

44. The mid-year review was the first negative performance review Mr. Whalen had received during his employment at BSE.

45. The mid-year review faulted Mr. Whalen's performance across a range of areas, including post-incident follow-through, project execution, cross-team partnership, and cybersecurity strategy. Ms. Cole's two prior reviews had not identified any of these as performance deficiencies, and had instead repeatedly praised Mr. Whalen's cross-functional collaboration as a strength.

46. The criticisms in the mid-year review were vague and subjective, addressing such matters as "driving the future of cybersecurity" and the pace of a vendor partnership project that had no established completion date.

47. The substance of the mid-year review's criticisms had not been communicated to Mr. Whalen, as deficiencies in his performance, in any form, at any time before that date.

48. When Mr. Whalen asked Ms. Cole to identify a specific example of something he had failed to do that he was expected to do, Ms. Cole was unable to provide one.

49. Mr. Whalen acknowledged receipt of the mid-year review on March 12, 2026. Six days later, his employment was terminated.

**F. BSE Terminates Mr. Whalen's Employment**

50. On or about March 18, 2026 — one week after the negative performance review, and sixteen days after Mr. Whalen returned from his second period of leave — Ms. Cole and a Human Resources Business Partner informed Mr. Whalen, in a previously scheduled meeting, that his employment was being terminated.

51. The termination was communicated as effective immediately, and Mr. Whalen was escorted from the building.

52. The only reasons Defendants gave for the termination were "shifting business needs" and "role alignment." Defendants offered no substantive explanation of either reason.

**G. Defendants' Stated Reasons Are Pretextual**

53. Defendants' stated reasons for terminating Mr. Whalen's employment are pretextual.

54. Before his leave, Mr. Whalen had received two performance reviews — rated "Exceeded Expectations" and "Consistently Meets Expectations" — and a performance bonus. He had never been disciplined or placed on a performance improvement plan.

55. The negative performance review that preceded Mr. Whalen's termination was issued nine days after his return from leave and relied on criticisms that had never previously been raised with him.

56. Mr. Whalen had a substantial volume of work assigned to him at the time of his termination, and he had previously requested additional staffing support from Ms. Cole.

57. The sequence and timing of events — a positive performance review and bonus, followed by two periods of protected parental leave, followed within sixteen days of Mr. Whalen's return by his termination — give rise to a strong inference that Mr. Whalen's protected leave, and his status as a new parent and caregiver, were motivating factors in Defendants' decisions.

**FIRST CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of the Family and Medical Leave Act**
*29 U.S.C. § 2615(a)(1)*
Against All Defendants

58. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59. The FMLA entitles eligible employees to take leave for the birth of a son or daughter, and in order to care for such child. 29 U.S.C. § 2612(a)(1)(A).

60. The FMLA prohibits an employer from discharging or in any other manner discriminating or retaliating against an employee for exercising, or attempting to exercise, rights protected by the Act. 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c).

61. At all relevant times, Mr. Whalen was an eligible employee, and BSE and Ms. Cole were employers, within the meaning of the FMLA.

62. Mr. Whalen exercised rights protected by the FMLA when he took two periods of leave following the birth of his son in order to care for and bond with the child.

63. Mr. Whalen was qualified for his position.

64. Defendants subjected Mr. Whalen to adverse employment actions, including removing him from a professional conference, issuing him a negative performance review, and terminating his employment.

65. Defendants took these actions because Mr. Whalen exercised his rights under the FMLA. Mr. Whalen's exercise of his FMLA rights was a motivating factor in Defendants' decisions.

66. Defendants' violations of the FMLA were willful.

67. As a direct and proximate result of Defendants' unlawful conduct, Mr. Whalen has suffered damages, and is entitled to recover:

a. lost wages, salary, employment benefits, and other compensation denied or lost by reason of the violation;

b. liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

c. equitable relief, including reinstatement and promotion, or front pay in lieu of reinstatement;

d. reasonable attorneys' fees, expert witness fees, and costs pursuant to 29 U.S.C. § 2617(a)(3);

e. prejudgment and post-judgment interest; and

f. such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Retaliation for the Use of a Legally Protected Absence in Violation of the New York Labor Law**
*N.Y. Lab. Law § 215*
Against All Defendants

68. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

69. New York Labor Law § 215 prohibits an employer, and any agent or officer of an employer, from discharging, penalizing, discriminating against, or retaliating against an employee because the employee has used any legally protected absence pursuant to federal, local, or state law.

70. Mr. Whalen's two periods of parental leave were legally protected absences under the New York Paid Family Leave law and the FMLA.

71. Defendants discharged Mr. Whalen, and subjected him to other adverse actions, because he used those legally protected absences.

72. As a direct and proximate result of Defendants' unlawful conduct, Mr. Whalen has suffered damages, and is entitled to recover:

a. lost wages, benefits, and other compensation;

b. liquidated damages and all other monetary relief available under N.Y. Lab. Law § 215;

c. injunctive and other equitable relief, including reinstatement;

d. reasonable attorneys' fees and costs;

e. prejudgment and post-judgment interest; and

f. such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Discrimination Because of Familial Status in Violation of the New York State Human Rights Law**
*N.Y. Exec. Law § 296*
Against All Defendants

73. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

74. The New York State Human Rights Law prohibits an employer from discriminating against an employee in compensation or in the terms, conditions, or privileges of employment because of the employee's familial status. N.Y. Exec. Law § 296(1)(a).

75. "Familial status" includes any person who is pregnant or who has a child, or who is in the process of securing legal custody of a child who has not attained the age of eighteen years. N.Y. Exec. Law § 292(26).

76. Mr. Whalen is the parent of young children, including a newborn son, and at all relevant times had a familial status protected by the New York State Human Rights Law. Defendants were aware of Mr. Whalen's familial status.

77. Defendants discriminated against Mr. Whalen in the terms, conditions, and privileges of his employment — including by excluding him from a professional conference, issuing him a negative performance review, and terminating his employment — because of his familial status.

78. Mr. Whalen's familial status was a motivating factor in Defendants' conduct.

79. Defendants' conduct was undertaken with malice or with reckless indifference to Mr. Whalen's protected rights.

80. As a direct and proximate result of Defendants' unlawful conduct, Mr. Whalen has suffered damages, and is entitled to recover:

a. back pay, front pay, and lost benefits;

b. compensatory damages, including damages for emotional distress;

c. punitive damages;

d. reasonable attorneys' fees and costs as permitted by N.Y. Exec. Law § 297;

e. prejudgment and post-judgment interest; and

f. such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Discrimination Because of Caregiver Status in Violation of the New York City Human Rights Law**
*N.Y.C. Admin. Code § 8-107*
Against All Defendants

81. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

82. The New York City Human Rights Law prohibits an employer from discriminating against an employee in compensation or in the terms, conditions, or privileges of employment because of the employee's actual or perceived caregiver status. N.Y.C. Admin. Code § 8-107(1)(a).

83. A "caregiver" is a person who provides direct and ongoing care for a minor child or for a care recipient. N.Y.C. Admin. Code § 8-102.

84. At all relevant times, Mr. Whalen was a caregiver for his newborn son and his other minor child, and had a caregiver status protected by the New York City Human Rights Law. Defendants were aware of Mr. Whalen's caregiver status.

85. Defendants discriminated against Mr. Whalen in the terms, conditions, and privileges of his employment — including by excluding him from a professional conference, issuing him a negative performance review, and terminating his employment — because of his caregiver status, and treated him less well than other employees at least in part because of that status.

86. Defendants' conduct was undertaken with malice or with reckless indifference to Mr. Whalen's protected rights.

87. As a direct and proximate result of Defendants' unlawful conduct, Mr. Whalen has suffered damages, and is entitled to recover:

a. back pay, front pay, and lost benefits;

b. compensatory damages, including damages for emotional distress;

c. punitive damages pursuant to N.Y.C. Admin. Code § 8-502;

d. reasonable attorneys' fees, expert fees, and costs pursuant to N.Y.C. Admin. Code § 8-502(g);

e. prejudgment and post-judgment interest; and

f. such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Interference with Rights Under the Family and Medical Leave Act**
*29 U.S.C. § 2615(a)(1)*
Against All Defendants

88. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

89. The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the Act. 29 U.S.C. § 2615(a)(1).

90. The FMLA entitles an eligible employee to twelve workweeks of leave during any twelve-month period for the birth of a son or daughter and in order to care for such child. 29 U.S.C. § 2612(a)(1)(A).

91. The FMLA further entitles an employee returning from leave to be restored to the position the employee held when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214.

92. At all relevant times, Mr. Whalen was an eligible employee, and BSE and Ms. Cole were employers, within the meaning of the FMLA.

**A. Failure to Provide Required FMLA Notices**

93. The FMLA's implementing regulations require an employer who has acquired knowledge that an employee's leave may be for an FMLA-qualifying reason to provide the employee, within five business days, with notice of the employee's eligibility for FMLA leave and written notice of the employee's rights and responsibilities under the Act. 29 C.F.R. § 825.300(b)–(c).

94. The regulations further require an employer, within five business days of having sufficient information to determine that an employee's leave is for an FMLA-qualifying reason, to provide the employee with a written designation notice specifying that the leave will be counted against the employee's FMLA entitlement and the amount of leave that will be so counted. 29 C.F.R. § 825.300(d).

95. Upon information and belief, BSE failed to provide Mr. Whalen with the Eligibility Notice, the Notice of Rights and Responsibilities, and the Designation Notice required by 29 C.F.R. § 825.300 in connection with either of his periods of parental leave.

96. As a direct result of Defendants' failure to provide the required FMLA notices, Mr. Whalen was deprived of information that the FMLA and its implementing regulations require employers to provide so that employees may knowingly exercise and protect their rights under the Act, including information bearing on the scheduling, structure, and duration of FMLA leave and the protections afforded to employees upon return from such leave.

97. Mr. Whalen was prejudiced by Defendants' failure to provide the notices required by 29 C.F.R. § 825.300.

**B. Failure to Restore Mr. Whalen to His Position**

98. Mr. Whalen exercised rights protected by the FMLA when he took two periods of leave following the birth of his son in order to care for and bond with the child.

99. Upon his return from FMLA leave on or about March 2, 2026, Mr. Whalen was entitled to be restored to the position he held when his leave commenced or to an equivalent position. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214.

100. Defendants did not restore Mr. Whalen to his prior position or to an equivalent position. Instead, sixteen days after his return from leave, Defendants terminated his employment.

101. By terminating Mr. Whalen's employment shortly after his return from FMLA leave, Defendants interfered with, restrained, and denied the exercise of his right to reinstatement under the FMLA.

102. Defendants' violations of the FMLA were willful.

103. As a direct and proximate result of Defendants' unlawful conduct, Mr. Whalen has suffered damages, and is entitled to recover:

a. lost wages, salary, employment benefits, and other compensation denied or lost by reason of the violation;

b. liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

c. equitable relief, including reinstatement and promotion, or front pay in lieu of reinstatement;

d. reasonable attorneys' fees, expert witness fees, and costs pursuant to 29 U.S.C. § 2617(a)(3);

e. prejudgment and post-judgment interest; and

f. such other and further relief as the Court deems just and proper.

## RELIEF SOUGHT

WHEREFORE, Plaintiff Ryan Whalen respectfully requests that this Court enter judgment in his favor and against Defendants, and:

A. Declare that Defendants' conduct violated the Family and Medical Leave Act, the New York Labor Law, the New York State Human Rights Law, and the New York City Human Rights Law;

B. Award Mr. Whalen back pay, lost benefits, and other lost compensation;

C. Award Mr. Whalen front pay, or order his reinstatement to a comparable position;

D. Award Mr. Whalen liquidated damages under the FMLA and the New York Labor Law;

E. Award Mr. Whalen compensatory damages, including damages for emotional distress;

F. Award Mr. Whalen punitive damages under the New York State and New York City Human Rights Laws;

G. Award Mr. Whalen reasonable attorneys' fees, expert fees, and the costs of this action;

H. Award Mr. Whalen prejudgment and post-judgment interest;

I. Grant such injunctive and other equitable relief as is necessary to remedy Defendants' unlawful conduct; and

J. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
October 21, 2026

Respectfully submitted,

QK LEGAL PLLC

By: /s/ Megan Quattlebaum
Megan Quattlebaum
Attorney ID: MQ9344
65 High Ridge Road, Suite 150
Stamford, CT 06905
43 West 43rd Street, Suite 350
New York, NY 10036
Tel: (203) 349-3216
Email: megan@qklegal.net

Attorneys for Plaintiff Ryan Whalen